IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>          Plaintiff<br><br>  vs.<br><br>MERRILL SCOTT & ASSOCIATES, LTD., et al.,<br><br>          Defendants. | ORDER AND MEMORANDUM DECISION<br><br><br>2:02 CV 39 |

The Securities and Exchange Commission filed this action against the now-defunct

financial advising company Merrill Scott & Associates, Ltd. ("Merrill Scott"),[1] alleging that

Merrill Scott misappropriated investor funds and was actively operating a Ponzi scheme.  A short

time after the SEC filed its complaint, the court entered an order freezing the assets of Merrill

Scott and appointing David K. Broadbent to serve as the company's receiver.  Currently, the

Receiver is actively engaged in gathering Merrill Scott's assets and reviewing claims against the

company submitted by Merrill Scott victims.

Although the proceedings in this case are still ongoing, the Receiver has recovered

substantial assets and the SEC has submitted a proposed plan of partial distribution that generally

---

[1]Merrill Scott is actually comprised of multiple nominally distinct entities.  For the sake of convenience, this Order and Memorandum Decision refers collectively to Merrill Scott and Merrill Scott-related entities as "Merrill Scott."

contemplates dividing, on a pro rata basis, the recovered assets of Merrill Scott among the clients defrauded by the company.  (See Mot. for Approval of Plan of Partial Dist. (dkt. #471).)

In the weeks following the filing of the SEC's motion for approval of the plan, many Merrill Scott victims filed written objections to the plan.  The court scheduled a time to hear argument on all objections to the proposed plan, and authorized claimants to supplement previously filed objections in advance of that hearing.  (See Order Regarding Sept. 20, 2006 Hearing 6-7 (dkt. #749).  Only a handful of claimants chose to supplement the argument already provided to the court.  Several claimants appeared at the hearing set aside to discuss the SEC's proposed plan.  Other claimants either settled their disagreements before the hearing or chose to rest on their written objections.  After considering all the objections and argument submitted by the parties, the court adopts the SEC's proposed plan of partial distribution.

### Law Governing Approval of a Distribution Plan

"Once the equity jurisdiction of the court has been properly invoked by a showing of a securities law violation, the court possesses the necessary power to fashion an appropriate remedy."  SEC v. Manor Nursing Centers, Inc., 458 F.2d 1082, 1103 (2d Cir. 1972).  In approving a plan of distribution, courts enjoy considerable discretion.  "The district court has broad powers and wide discretion to determine relief in an equity receivership."  Id. (citing SEC v. Safety Fin. Serv., Inc., 674 F.2d 368, 372 (5th Cir. 1982); SEC v. Lincoln Thrift Ass'n, 577 F.2d 600, 609 (9th Cir. 1978); SEC v. United Fin. Group, Inc., 474 F.2d 354, 358 (9th Cir. 1973)).  It is appropriate for the court to use summary proceedings when establishing a relief plan.  See id. ("A summary proceeding reduces the time necessary to settle disputes, decreases litigation costs, and prevents further dissipation of receivership assets."); see also Smith v. Am.

<u>Indus. Research Corp.</u>, 665 F.2d 397, 399 (1st Cir. 1981) (use of single receivership proceeding best serves the parties' and the government's interest in judicial efficiency).

Here, the SEC has proposed that similarly situated victims of Merrill Scott each receive a pro rata share of any distribution from the receivership estate. Such an approach is not uncommon in cases involving wide-ranging financial fraud, especially when a hallmark of that fraud is commingling of investor funds. As noted by the Second Circuit, "[c]ourts have favored <u>pro rata</u> distribution of assets where, as here, the funds of the defrauded victims were commingled and where victims were similarly situated with respect to their relationship to the defrauders." <u>SEC v. Credit Bancorp, Ltd.</u>, 290 F.3d 80, 88 (2nd Cir. 2002); <u>see also</u> <u>United States v. Real Property</u>, 89 F.3d 551, 553 (9th Cir. 1996) ("[T]he equities demand that all . . . defrauded customer[s] share equally in the fund of pooled assets in accordance with the SEC plan."); <u>Commodity Futures Trading Com'n v. Topworth Internat'l, Ltd.</u>, 205 F.3d 1107, 1116 (9th Cir. 1999) (concluding that a pro rata approach would best serve equitable purposes of receivership).

## The Proposed Plan

The proposed plan submitted by the SEC takes an "equality is equity" approach. Essentially, the plan proposes a pro rata distribution of funds in the receivership estate but excludes certain categories of victims from sharing in the recovery. Specifically, non-participants are designated as: (1) Glen Argenbright, (2) Patrick M. Brody, (3) Michael G. Licopantis, (4) T. Shelton Powers, (5) David E. Ross II, (6) Susan Sermon, and (7) Harold Sermon. Also excluded from the plan are those individuals or entities that have settled claims with the Receiver or who failed to submit a claim within the required time.

The SEC's proposed plan outlines the following five categories of claims, in descending order of priority: (1) Administrative Expense Claims, (2) Tax Claims, (3) Non-Insider Investor Claims, (4) Non-Participant Claims--Loans and Accounts Payable, and (5) Non-Investor Creditors.  The first two categories relate to necessary expenditures (administrative expenses and taxes) to allow continued operation of the receivership.  The third category refers to claims submitted by Merrill Scott clients who invested money with Merrill Scott and were the victims of fraud in relation to that investment.  The fourth category covers claims submitted by clients of Merrill Scott who the SEC argues should not participate in a distribution.  The fifth category includes creditors of Merrill Scott who did not invest in the company.  At the present time, the SEC's proposed plan contemplates distributions to those claimants whose claims fall within the first three categories.  Claims falling within the first two categories would be paid in full and claims falling within the third category would be paid on a pro rata basis.

Throughout the briefing process, and also in oral argument, the SEC has emphasized that it has proposed a plan for partial distribution.  The SEC argues that a partial distribution is appropriate because the core litigation has been ongoing for several years, the Receiver has recovered substantial assets, and there is no reason that victims of Merrill Scott should have to wait until the conclusion of litigation to receive at least an initial payment toward their total claim.  The SEC notes that the proposed plan vests the court with continuing jurisdiction to monitor plan administration and to make adjustments to the plan as necessary.  Accordingly, while the court approves the plan of partial distribution, claimants should be aware that the plan may be modified as this case continues.

4

## The Objections

Twenty-eight claimants filed objections to the SEC's proposed plan.  With the exception of one objection filed by Dr. Powers, a class four claimant,[2] all objections were filed by class three claimants.  Many of the objections overlap.  Accordingly, instead of addressing each individual objection, this order will address the categories of objections that claimants have raised.[3]

A.      *Objection No. 1: Insufficient Information*

Several claimants objected to the proposed plan on the ground that the plan lacks sufficient detail to enable claimants to make a determination whether an objection is warranted.  Specifically, objectors complained that the Receiver has not provided claimants with information concerning assets within the receivership estate and the process used when assessing the validity of submitted claims.

During oral argument addressing these objections, both the SEC and the Receiver indicated their willingness to provide such information to any claimant who desires it.  Counsel for the objecting parties conceded that no attempt had been made to contact the SEC or the Receiver to obtain the information in question.  Further, the SEC represented that neither the SEC or the Receiver were relying solely on the claim information submitted by various Merrill

---

[2]Dr. Powers objection to the proposed plan is addressed in a separate order.  (See Order & Memo. Decision (dkt. #878).)  In that order, the court also addresses the objections to the proposed plan filed by Thomas J. Mynar.  (See id.)

[3]it is important to note that this order does not address the propriety of claim amounts.  Rather, this order only addresses the process and general structure of the distribution plan.  Accordingly, any objection filed by a claimant challenging the amount of a claim will not be addressed in this order.

Scott clients and that a third-party accounting firm was engaged in reviewing source documents to verify the legitimacy of submitted claims.

It is understandable that claimants want as much information about the claims process as possible.  Given the willingness of the SEC and the Receiver to provide such information to claimants and considering that the proposed plan is meant to serve as a broad outline governing the distribution process, the lack of detailed claims information is not fatal to the approval of the plan.  As noted, the court retains the ability to monitor administration of the plan and make any modifications necessary.

B.    *Objection No. 2: Treatment of Equity Management Mortgages*

Claimants who invested in a particular Merrill Scott product called "equity management mortgages,"or EMMs, objected to the manner in which the SEC's proposed plan treated EMM investments.  EMMs were presented to Merrill Scott clients as "friendly mortgages," through which Merrill Scott would encumber property held by a client to dissuade creditors from using the mortgaged property to satisfy a debt.

During oral argument, it became clear that this objection was based on a misunderstanding of the proposed plan.  The objection was based on the belief that the SEC's plan excluded EMMs from the calculation of the total amount a client invested in Merrill Scott, perhaps diminishing a claimant's pro rata share.  But the SEC explained that the proposed plan does not exclude EMM amounts from the total investment number.  Rather, the SEC's plan includes EMMs when calculating the total investment, but treats the outstanding obligations on mortgages as a debt owed by the Merrill Scott client to the receivership estate.  Counsel for objecting parties conceded that the SEC's approach was equitable and withdrew the objection

provided that claimants could verify the manner in which the SEC and the Receiver treated the EMM.[4]

C.       *Objection No. 3: Exclusion of Planning Fees*

Merrill Scott charged its clients planning fees for analyzing clients' financial situations and proposing financial plans to help clients reach various objectives.  In some cases, Merrill Scott charged fees for services that did not result in a direct investment with Merrill Scott.  For example, some Merrill Scott clients paid for tax planning services and the implementation of the Merrill Scott tax plan involved funneling money not into the Merrill Scott system but to third parties.  In such situations, the only money received directly by Merrill Scott was the fee the client paid for the tax planning services.

The SEC's proposed plan treats all fees paid to Merrill Scott as unrecoverable.  Multiple claimants object to the exclusion of fees from claim amounts.  The objectors assert that the money paid in fees was not qualitatively different from money invested in the Merrill Scott system.  In both case, the claimants argue, Merrill Scott clients did not receive what they were promised and lost substantial sums of money in the process.

During oral argument, the SEC conceded that the proposed plan would be equitable whether it included recovery of fees or not.  But the SEC defended its exclusion of fees as part of the difficult but necessary task of drawing lines to best facilitate an equitable resolution.  See Wang, 944 F.2d at 87 ("This kind of line drawing--which inevitably leaves out some potential

---

[4]Another claimant, Jeffrey C. Bermant, raised a similar objection in relation to Merrill Scott's loss of income insurance policy product.  The court addressed Mr. Bermant's arguments in an earlier Order and Memorandum Decision issued in an ancillary case.  (See Bermant v. Broadbent, 2:05 CV 466 (D. Utah), Order & Memo. Decision (dkt. #86).)

claimants--is, unless commanded otherwise by the terms of a consent decree, appropriately left to the experience and expertise of the SEC.").

The SEC is undoubtedly correct that a plan allowing for the recovery of fees paid to Merrill Scott would be fair and reasonable. But the exclusion of claims for fees is also reasonable under the circumstances. Although many claimants assert that they paid substantial fees to receive ultimately worthless (or, more accurately, financially damaging) advice, fee payments differ from investments in the Merrill Scott system. During oral argument, the SEC indicated that, depending on the final size of the receivership estate, it may be appropriate to include fee claims in a subsequent distribution. For the purposes of this initial, partial distribution, the court approves of the SEC's exclusion of fees from the amounts recoverable by Merrill Scott clients.

D.      *Objection No. 4: The Plan Should Give Preferential Treatment to Claimants with Clean Hands*

Some claimants assert that certain other Merrill Scott clients were making use of Merrill Scott's services in order to cheat on taxes or improperly hide assets. The objecting claimants argue that those claimants that went to Merrill Scott seeking legitimate tax reduction and planning services should be treated more favorably than those clients who went to Merrill Scott with improper motives.

The SEC's plan takes no position on the motivation of the claimants. And, without exception, claimants participating in this action have maintained that they believed the services offered by Merrill Scott were legitimate. Distinguishing between claimants on the basis of their subjective motivation to contact Merrill Scott would be, if even possible, incredibly burdensome.

The SEC's decision to treat all Merrill Scott investors the same is fair and reasonable under the circumstances.

E.    *Objection No. 5: The Plan Is Not Supported by Sufficient Evidence that Certain Investor Assets Were Tainted by Illegal Acts*

Several claimants filed objections to the proposed plan claiming that they should be entitled to trace identifiable funds that were not tainted by the alleged illegal acts of Merrill Scott.  The court has already addressed identical arguments raised by Richard Gerber, M.D., and Dr. Powers.  The SEC's position that all funds and assets transferred into the control of Merrill Scott are recoverable by the pool of claimants is in complete harmony with the facts of this case: Merrill Scott clients purposefully transferred assets into the Merrill Scott system without retaining legal authority to control those assets.  The SEC's position is also consistent with the Receiver's instructions to marshal all assets within Merrill Scott's control.  charged with the task of gathering all assets within Merrill Scott's control.  (See Stipulated Order Appointing Receiver 2-3 (dkt. #15) ("The Receiver shall take control of Merrill Scott's funds, assets and property . . . belonging to or in the possession of or control of Merrill Scott . . . .").)  The Receiver's authority to marshal assets extends to "Merrill Scott & Associates, Ltd., Merrill Scott & Associates, Inc., and Phoenix Overseas Advisers, Ltd, and all subsidiaries and affiliated entities."  (Id. at 2.)

All claims of beneficial ownership of traceable assets controlled by Merrill Scott must be rejected in favor of ensuring that the equitable purposes of this receivership are preserved.  The record is filled with evidence illustrating that Merrill Scott moved funds fluidly without regard to corporate formalities and with only minimal attempts at tracking the movement of funds.  As acknowledged by the Eleventh Circuit:

9

> To allow any individual to elevate his position over that of other investors
> similarly victimized by asserting claims for restitution and/or reclamation of
> specific assets based upon equitable theories of relief such as fraud,
> misrepresentation, theft, etc. would create inequitable results, in that certain
> investors would recoup 100% of their investment while others would receive
> substantially less.

Elliott, 953 F.2d at 1569 (quoting distribution order of the district court) (internal quotation marks omitted).

The principle underlying the disallowance of such relief to certain victims in cases like this is easily understandable.  Equitable theories of relief are generally premised on the wrongdoing of the party against whom relief is sought.  "While a party may itself be denied a right or defense on account of its misdeeds, there is little reason to impose the same punishment on a trustee, receiver or similar innocent entity that steps into the party's shoes pursuant to a court order or operation of law."  FDIC v. O'Melveny & Myers, 61 F.3d 17, 19 (9th Cir. 1995).  Further, and more fundamentally, granting equitable relief to certain parties thwarts the overall equitable purpose of the receivership estate by skewing distributions from the receivership estate in favor of certain victims at the expense of other victims and not the expense of the entity that committed wrongdoing.  See Elliott, 953 F.2d at 1569.

Although the specific details of each client's dealings with Merrill Scott may vary, the end result is the same: Merrill Scott misrepresented the manner in which it would handle the funds it received, it misrepresented the amount of control the client would retain over transferred assets, and the client suffered as a result.  Given this fundamental similarity between all Merrill Scott clients, it would defeat the purposes of the receivership to allow certain claimants to gain equitable relief at the expense of other claimants.  Accordingly, all objections based on theories

10

of beneficial ownership of certain assets or assertions that tracing should be allowed must be rejected in favor of a pro rata distribution where all victims of Merrill Scott are treated equally.

### Conclusion

For the foregoing reasons, the SEC's Motion for Approval of Plan of Partial Distribution (dkt. #471) is GRANTED.  Consistent with the terms of that plan, the court retains jurisdiction to monitor the administration of the plan and make any modifications that may become necessary.


SO ORDERED this 2nd day of January, 2007.


BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
United States District Judge