IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| SECURITES & EXCHANGE COMMISSION,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>MERRILL SCOTT & ASSOCIATES, LTD., MERRILL SCOTT & ASSOCIATES, INC., PHOENIX OVERSEAS ADVISERS, LTD., GIBRALTAR PERMANENTE ASSURANCE, LTD., PATRICK M. BRODY, DAVID E. ROSS II, and MICHAEL G. LICOPANTIS,<br><br>　　　　　　　Defendants. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br><br>Case No. 2:02-CV-39-TC |

　　　　This matter comes before the court on Intervenor United States of America's Objection To Magistrate Judge's Discovery Order, which allowed interested party Dr. Richard Gerber to engage in limited discovery with the United States. Also before the court are Dr. Gerber's Cross-Motion For Return of Documents and Defendant Patrick Brody's Motion To Publish Discovery Responses.[1]

　　　　For the reasons set forth during the January 17, 2008 hearing on the United States'

---

[1]Mr. Brody also filed a Motion for a Hearing on the United States' Motion to Intervene (Docket # 1070). But the magistrate judge granted the United States' Motion to Intervene without a hearing, and no objection to that ruling was filed. Accordingly, Mr. Brody's motion for a hearing is DENIED AS MOOT.

Objection,[2] the court VACATES the portion of the Magistrate Judge's November 5, 2007 Order granting discovery.[3]  Accordingly, Mr. Brody's Motion to Publish Discovery Responses is DENIED AS MOOT.  Further, for the reasons set forth during the hearing and in this Order, the court modifies the February 2, 2004 Protective Order, and the December 8, 2004 Protective Order.  Given the modification articulated below, and because the court finds that the requested discovery is not appropriate or necessary, Dr. Gerber's Cross-Motion for Return of Documents is DENIED.

## BACKGROUND

**The Protective Orders**

On February 2, 2004, the court signed and issued a Protective Order drafted by attorneys for Dr. Gerber and approved as to form by counsel for the Securities and Exchange Commission (SEC) and the Receiver.  The February 2004 Order stated that the parties (Dr. Gerber, SEC, and Receiver) stipulated to entry of the Order.

In the February 2004 Protective Order, the court provided that:

> <u>All Confidential Information</u> [defined in the Order] produced by Dr. Gerber, <u>including information provided by Dr. Gerber in the course of a deposition</u>, shall be subject to this Protective Order and <u>shall be used solely for purposes of litigating this action</u> and shall not be used, directly or indirectly, by parties, counsel, or non-parties receiving it for or in connection with any other purpose of any kind, including but not limited to any commercial use or any other legal proceedings.  All persons who gain access to Confidential Information shall be and are hereby prohibited and enjoined from disclosing or using it except as specifically provided herein.  Counsel and all other persons to whom Confidential Information is disclosed shall take reasonable and appropriate precautions to

---

[2](<u>See</u> Tr. of Jan. 17, 2008 Hr'g.)

[3]The portion of the Magistrate Judge's November 5, 2007 Order granting the United States' Motion to Intervene is not vacated.

> avoid misuse, loss, and/or unauthorized disclosure of Confidential Information. The term "this action" shall be defined as the above-captioned [civil] matter and all related litigation commenced by the Receiver or the Securities and Exchange Commission (the "Commission").

(Feb. 2, 2004 Protective Order (Dkt # 228) ¶ 2 (emphasis added).)  But Paragraph 2 was followed by a list of exceptions:

> Confidential Information shall not be disclosed, repeated, given, shown, made available, or communicated in any way to anyone other than to the following persons **to whom it is necessary that such Confidential Information be given for the purposes permitted in paragraph 2** hereto: . . . (f) The United States Attorney's Office for the District of Utah.

(Id. ¶ 3 (emphases added).)  The Protective Order also required the following:

> Within 45 days of the conclusion of this litigation by dismissal, final judgment, disposition of appeal, or settlement, Confidential Information produced in this litigation, including originals, copies, abstracts, or summaries thereof, shall be returned to counsel for Dr. Gerber, and no copies thereof shall be retained by any other person or else the receiving party shall destroy all such Confidential Information.

(Id. ¶ 11 (emphasis added).)

On February 9, 2004, and February 10, 2004, Dr. Gerber was deposed.  He also produced documents during his deposition.

Apparently SEC gave a copy of the deposition transcript and exhibits to the United States Department of Justice (DOJ), of which the United States Attorney's Office for the District of Utah is a part.  The SEC has an agreement with the DOJ to turn over information that may assist DOJ investigation of federal crimes.  (See, e.g., 15 U.S.C. § 77t(b) ("The Commission may transmit such evidence as may be available concerning such acts or practices [the Commission believes constitute violation of the securities laws] to the Attorney General who may, in his discretion, institute the necessary criminal proceedings under this subchapter."); 15 U.S.C.

3

§ 78u(d)(1) (same); 15 U.S.C. § 78x(c) (allowing confidential disclosures by SEC to third parties "upon a showing that such information is needed"); 17 C.F.R. § 240-24c-1(b)(1) (allowing SEC to provide nonpublic information to another federal agency such as the DOJ or IRS); Transcript of Nov. 1, 2004 Hr'g [hereinafter "Tr."] at 12 (SEC attorney stating that SEC "has a statutory obligation to share information that it receives with the [DOJ] when they so request. . . . [I]n this case the [DOJ] has made such a request.").

That information was then disclosed to the Internal Revenue Service (IRS), which is a division of the U.S. Department of Treasury. The IRS has separate authority to investigate potential violations of the federal tax laws.  (At that time, Dr. Gerber and his attorneys were not aware that the information had been provided to the IRS.)

In October 2004, after the Receiver set up the Claims Procedure and "claims bar date" for interested parties, Dr. Gerber and other interested parties filed a motion to enjoin enforcement of the claims bar date.  The court held a hearing on November 1, 2004, to address the motion. During the hearing, the movants, including Dr. Gerber, expressed concern that if the court denied their motion to enjoin, they, as claimants, would have to file forms containing confidential information and so they requested a protective order.  (See Tr. at 6-8.)  Counsel for the SEC requested that if a protective order were issued, it should allow for the SEC's obligation to produce documents to the Department of Justice.  (Id. at 12.)  The court said "that's fair."  (Id. at 13.)   The court then asked SEC counsel and the Receiver to draft the protective order, and stated, "I am going to grant the motion for a protective order, which I will direct all parties to meet and prepare, and there will be the provision that the S.E.C. can turn the documents over pursuant to a request from the Department of Justice." (Id. at 15.)

On December 8, 2004, the court issued a Protective Order (drafted by the Receiver and approved as to form by the SEC) governing materials produced during the Claims Procedure. The December 2004 Protective Order contained language similar, but not identical, to the February 2004 Protective Order. (<u>See</u> Dec. 8, 2004 Protective Order (Dkt # 387) ¶¶ 5-6.) The exceptions paragraph authorized not only disclosure of the Confidential Information to the United States Attorney's Office for the District of Utah but also to "any other department or agency of the federal government." (<u>Id.</u> ¶ 6(f).) And, unlike the February 2004 Protective Order, the December 2004 Protective Order did not contain a provision requiring return of the Confidential Information upon conclusion of the matter.

On the day the December 2004 Protective Order was issued, Dr. Gerber and others objected to the Order, stating that it "did not reflect the court's ruling on the limited disclosure to the U.S. Justice Department." (Dec. 8, 2004 Objection to Protective Order (Dkt # 388) ¶ 3.) The court, rather than signing the proposed order submitted by Dr. Gerber and other interested parties, issued a separate Order that read, in pertinent part, as follows:

> After thoroughly reviewing the Property Owners' objections, the court orders that paragraph six section (f) of the December 8, 2004 Protective Order shall state: "(f) The United States Attorney's Office for the District of Utah." The court finds that <u>removing the reference to "any other department or agency of the federal government"</u> accurately reflects the court's November 1, 2004 order. The court declines to adopt all other changes to the Protective Order sought by the Property Owners' objections.

(Dec. 21, 2004 Order (Dkt # 397) at 2 (emphasis added).) Paragraph 5 of the December 8, 2004 Protective Order was not modified, so the language of the December 2004 Order continued to limit the use of Confidential Information to "purposes directly related to this Action[.]"

**The IRS Subpoenas**

In late 2005 and early 2006, the IRS issued a series of administrative summons to attorneys and financial institutions alleged to possess records belonging to Dr. Gerber. Dr. Gerber filed motions to quash in the U.S. District Court for the District of Columbia. As one of his defenses, Dr. Gerber contended in the D.C. court that the IRS had obtained certain information (e.g., his deposition transcript) in violation of the protective orders issued by this court. The IRS apparently withdrew its summons and requested that the D.C. District Court dismiss the action as moot.

Now the United States has intervened in this case for the limited purpose of obtaining clarification or modification of the arguably ambiguous protective orders. Apparently, the United States seeks a ruling that will assist it in formulating a response to Dr. Gerber's objections in the D.C. District Court proceedings.

## ANALYSIS

**Dr. Gerber's Position**

Dr. Gerber contends that the United States DOJ violated the Protective Orders by disclosing the Confidential Information to the IRS and using it for purposes unrelated to the SEC's civil enforcement action (that is, using it to investigate alleged criminal behavior). He also contends that the IRS is bound by the Protective Orders. Consequently, he argues, the DOJ and the IRS must, at a minimum, return all of the Confidential Information they obtained and answer to the court for those alleged violations. Further, he contends that his Fifth Amendment rights have been violated by the government. Specifically, he says he relied on the terms of the Protective Orders when he agreed to be deposed and produce documents, so he did not

knowingly and voluntarily waive his Fifth Amendment privilege against self-incrimination. To allow the IRS and DOJ to keep and use the Confidential Information in any matter they see fit would, he argues, eviscerate his Fifth Amendment rights.

**The United States' Position**

The United States, in turn, contends that the Protective Orders are ambiguous and should be interpreted in favor of disclosure of the information. It argues that the balancing of interests weighs in favor of the public's interest in law enforcement. It also argues that the Protective Orders do not, and cannot, provide "use immunity" to Dr. Gerber, and so the United States is not bound by the use restrictions contained in the Protective Orders.

**The Court's Ruling**

During the January 17, 2008 hearing on the United States' objections to the magistrate judge's discovery order, the court noted that the issue of Dr. Gerber's Fifth Amendment rights was not before the court. (Tr. at 10.) Consequently, the court did not make any finding whether there was a knowing and intelligent waiver of Fifth Amendment privileges. (Id. at 15 ("I am not going to say whether Dr. Gerber knowingly gave up his Fifth Amendment rights. I simply don't have enough to know on that, and it would be simply an advisory opinion.").) Such an issue should be handled in a criminal proceeding, if one is filed:

> The government does not have to return the materials. However, I want to make it very clear I am - - and they can use it as I guess they wish they can use it, except if the matter is brought to trial, the question of whether the information can be used or whether the statements can be introduced or whether any ongoing investigation or any investigation based on this can be used will be solely the province of the . . . judge hearing the criminal case. That means, government, that if you're using it in an investigation and perhaps whatever, that you, I suppose, could run the risk of the criminal judge granting a motion to suppress a lot of evidence as fruits of the poisonous tree. . . . But that is your decision.

(Id. at 13-14.)

As for discovery, it is not necessary. The material issue here is not what happened (no one disputes that disclosure occurred).[4] The question is what must be done with the deposition transcript and documents that Dr. Gerber produced to the SEC under the Protective Orders.

When the Protective Orders were issued, the court clearly contemplated that the SEC could and would turn over the material to the U.S. Attorney's Office and the DOJ for law enforcement purposes and that the material would not be returned. Given the court's error and the apparent confusion on that point, a finding that the government violated the Protective Orders would not be appropriate.

Further, to the extent it was not stated clearly in the Protective Orders, the court now states that the use restrictions in the February 2004 and December 2004 Protective Orders did not, and do not, apply to the U.S. Attorney's Office or the DOJ.[5] The court simply intended to allow the SEC to comply with its statutory and regulatory obligation to provide materials to the United States Department of Justice for use without interference from a civil Rule 26(c) protective order. (See Tr. at 14-15 ("I had no intention, I did not sanction its use in a criminal case or a criminal investigation, I did not forbid its use. . . . What Dr. Gerber's understanding was is a matter for a later day.").) And such a holding extends to the IRS, because even though the IRS is part of the Department of Treasury, it too has obligations to investigate criminal

---

[4]Again, if there was bad faith, that may be relevant in a suppression hearing during a criminal proceeding, but not here.

[5]Accordingly, the court's December 21, 2004 Order modifying the December 8, 2004 Protective Order was improvidently issued.

wrongdoing and enforce the tax laws. The court had no intention of tying the hands of law enforcement agencies, whether in the Department of Justice or the Department of Treasury, particularly because it is the United States Attorney's sole authority to grant use immunity, see <u>In re Grand Jury Subpoena</u>, 836 F.2d 1468, 1475 (4th Cir. 1988) (citing 18 U.S.C. § 6003).

Whether the DOJ's use of the documents (e.g, disclosure to the IRS) and the IRS's subsequent use of the materials was proper is not for this court to decide. That is, the court will not issue an advisory opinion on whether the government has complied with its statutory and constitutional obligations in its investigation of Dr. Gerber. Nor will the court rule on whether the materials may be used in a criminal proceeding against Dr. Gerber.

## ORDER

For the foregoing reasons, the court ORDERS as follows:

1. The portion of the November 5, 2007 Order (Dkt # 1110) permitting the discovery requested by Dr. Richard Gerber is VACATED.

2. Defendant Patrick Brody's Motion for Hearing on the United States' Motion to Intervene (Dkt # 1070) is DENIED AS MOOT.

3. Defendant Patrick Brody's Motion to Publish Discovery Responses (Dkt # 1165) is DENIED AS MOOT.

4. Dr. Richard Gerber's Cross-Motion for Return of Documents (Dkt # 1078) is DENIED.

5. The court hereby VACATES the portion of its December 21, 2004 Order (Dkt # 397) that removes the reference to "any other department or agency of the federal government"

in the court's December 8, 2004 Protective Order.

DATED this 30th day of January, 2008.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
Chief Judge